IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN SMEEKS, | No. CIV S-04-0781-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for judgment on the pleadings (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 21).

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

Plaintiff applied for disability insurance ("DI") and supplemental security income ("SSI") benefits on July 11, 2002, based on disability. In his applications, plaintiff claims that his impairment began on April 5, 2002. Plaintiff claims his disability consists of a combination of HIV and Hepatitis C. Plaintiff is a United States citizen born January 26, 1968, with a high school equivalency and some college.

### A.  Summary of the Evidence

The certified administrative record contains medical records from plaintiff's treating physician, Paolo V. Troia-Cancio, M.D. As related to plaintiff's mental functioning, these records include three mental assessments of plaintiff's ability, as follows:

<u>August 4, 2002, Mental Assessment</u>

Dr. Troia-Cancio opined that plaintiff could do the following activities: lift and carry 20 pounds occasionally and ten pounds frequently; stand and/or walk at least two hours in an eight-hour workday, with normal breaks; and sit less than six hours in an eight-hour workday, with normal breaks. Dr. Troia-Cancio did not specify how many hours plaintiff could sit. Dr. Troia-Cancio also stated that plaintiff could climb, balance, stoop, kneel, crouch, and crawl occasionally. He stated that plaintiff does not require alternate standing and sitting, and that plaintiff's seeing, hearing, and speaking are unlimited, and noted that plaintiff tires easily and is severely depressed. Dr. Troia-Cancio stated that plaintiff has no environmental restrictions, such as limitations on working with machinery. Finally, he stated that he last saw plaintiff on August 2, 2002, and that plaintiff's prognosis was fair.

<u>October 13, 2003, Mental Assessment</u>

The assessment indicates that Dr. Troia-Cancio has treated plaintiff since May 2001. Dr. Troia-Cancio diagnosed depression with a secondary diagnosis of HIV infection. Dr. Troia-Cancio noted mild impairment as to plaintiff's ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, and maintain personal appearance. He noted moderate impairment as to plaintiff's ability to understand, remember, and carry out simple instructions, and demonstrate reliability. He noted marked impairment as to plaintiff's ability to deal with work stresses and maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations. He noted extreme impairment as to plaintiff's ability to understand, remember, and carry out detailed, complex job instructions. Dr. Troia-Cancio stated that plaintiff's chronic physical illness and problems with short-term memory and concentration explain these limitations.

<u>November 5, 2003, Mental Assessment</u>

On this assessment, Dr. Troia-Cancio opined that plaintiff could do the following activities: lift and carry ten pounds occasionally and five pounds frequently; stand and/or walk for only one hour in an eight-hour day, with a break every 30 minutes; sit for 30-40 minutes, with a break every 15 minutes; frequently crawl, occasionally bend, stoop, crouch, and kneel, and never climb or balance. Dr. Troia-Cancio stated that plaintiff's ability to read, handle, feel, push and/or pull, and hear are all affected by his impairments, but that his ability to see and speak are not. Dr. Troia-Cancio indicated that plaintiff's abilities are limited by his fatigue, HIV, and depression. He also stated that plaintiff is afraid of heights, has low back pain, and has stiff fingers and that these are additional reasons for plaintiff's limitations.

The administrative record also contains the report based on a comprehensive psychiatric evaluation performed on August 25, 2002, by an agency examining physician, Rajinder Randhawa, M.D. Dr. Randhawa's assessment is based on a one-page record relating to plaintiff's HIV infection, and on his examination of plaintiff. Dr. Randhawa reported plaintiff's chief complaint as follows: "I've been very sick. I am very tired. I haven't been feeling good at all. I am very depressed." Dr. Randhawa stated that plaintiff spoke coherently during the examination, although it was difficult for him to understand questions, which often had to be repeated. Dr. Randhawa stated that plaintiff seemed to be struggling to focus and concentrate. He noted "significant signs and symptoms of depression, such as helplessness, hopelessness, worthlessness, frequent crying spells, loss of weight, loss of desires and interests, significant lack of motivation, and isolative behavior."

Dr. Randhawa diagnosed major depressive disorder due to plaintiff's medical condition, stated that current medication for depression was not working, and concluded that plaintiff's depression was not likely to improve. Dr. Randhawa assessed plaintiff as follows:

1. The claimant appears to be capable of managing his funds, as he had adequate calculation skills on the formal mental status examination;

2. The claimant has the ability to comprehend some simple instructions but cannot carry out or sustain simple, repetitive tasks adequately due to a lack of motivation, desire and interest and also fatigue; he is incapable of comprehending detailed or complex instructions and/or sustaining such information to complete such tasks in a sustained manner;

3.     [The claimant] is able to accept instructions from supervisors; he is a cordial, cooperative, and polite individual; he can also interact with co-workers and the public normally and adequately;

4.     [The claimant] is capable of performing work activities only for a short while and in very limited manner; and

5.     [The claimant] is not likely to maintain regular attendance in the workplace or complete a normal workday and workweek, as he is likely to have significant, continuing, severe interruptions from his progressively worsening depressive symptomatology; he is incapable of withstanding any kind of stress of that is commonly encountered in a competitive workplace.

The record also contains the report based on a psychiatric evaluation performed by agency examining physician Andrea Bates, M.D. Dr. Bates' evaluation is based on her review of plaintiff's medical records and her examination of plaintiff. Dr. Bates observed that plaintiff was alert and oriented during the examination, but that plaintiff had difficulty with memory. As to abstract thinking, Dr. Bates noted that, while plaintiff correctly identified the shape similarity between apples and oranges, he could not interpret three separate proverbs in an abstract manner. Dr. Bates observed that plaintiff's mood was slightly depressed. Dr. Bates diagnosed depressive disorder and offered the following functional assessments:

1.     The claimant is not significantly impaired in his ability to understand, remember, and carry our <u>simple</u> one or two-step job instructions (emphasis in original);

2.     The claimant is not significantly impaired in his ability to do detailed and <u>complex</u> instructions (emphasis in original);

3.     The claimant is not significantly impaired in his ability to relate and interact with supervisors, co-workers, and the public;

4.     The claimant is not significantly impaired in his ability to maintain concentration and attention, persistence and pace;

5.     The claimant is not significantly impaired in his ability to associate with day-to-day work activity, including attendance and safety;

6.     The claimant is not significantly impaired in his ability to adapt to the stresses common to a normal work environment;

/ / /

    7.    The claimant is not significantly impaired in his ability to maintain regular attendance in the work place and perform work activities on a consistent basis; and

    8.    The claimant is not significantly impaired in his ability to perform work activities without special or additional supervision.

**B.**    <u>**Procedural History**</u>

Plaintiff's claims were initially denied. Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on November 18, 2003, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his January 23, 2004, decision, the ALJ made the following findings:

    1.    The claimant met the disability insured status requirements of the Act on April 5, 2002, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision;

    2.    The claimant has not engaged in substantial gainful activity since April 5, 2002;

    3.    The medical evidence establishes that the claimant has severe impairments due to a history of Hepatitis C, HIV infection, major moderate recurrent depression, and anxiety disorder; however, he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4;

    4.    The claimant's complaints of pain and limitations are not found to be fully credible for the reasons stated in the body of this decision, and not supported by the medical evidence contained in the record;

    5.    The claimant's combined impairments limits him to the performance of a full range of sedentary work, and a limited range of light work; the claimant has the retained residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 4 hours total in an 8-hour workday, and sit for 6 hours in an 8-hour workday, with regular break opportunities; non-exertionally, he is limited to the performance of simple, routine tasks;

    6.    The claimant is unable to perform his past relevant work as a security guard and cook;

    7.    The claimant has the residual functional capacity to perform the full range of sedentary and a limited range of light work on a sustained basis;

    8.    The claimant is 36 years old, which is defined as a younger individual;

9. The claimant has a high school education;

10. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material;

11. If the claimant were limited to no more than the full range of sedentary work, Rules 201.27 and 201.28 of Table No. 1, would direct a conclusion of not disabled; in this case, the claimant's occupational base is even broader because he can perform some light work; thus, using Rules 202.20, 202.21, and 202.22 as a framework for decision making, there are a significant number of jobs in the national economy which he can perform; and

12. The claimant was not under a disability at any time through the date of this decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to DI or SSI benefits. After the Appeals Council declined review on March 29, 2004, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th

Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for judgment on the pleadings, plaintiff argues that the ALJ erred in three ways in determining that he was not disabled. Specifically, plaintiff argues: (1) the ALJ improperly rejected or ignored the medical opinions of his treating physicians without providing legally sufficient reasons for doing so; (2) the ALJ improperly rejected his testimony as not credible without providing legally sufficient reasons for doing so; and (s) the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") at 20 C.F.R., Part 404, Subpart P, Appendix 2, in determining disability given plaintiff's non-exertional limitations.

**A.      Weight Given to Medical Opinions**

Plaintiff argues that the ALJ improperly gave greater weight to the opinion of a one-time consultative examining doctor than the opinion of his treating physician. Specifically, plaintiff asserts that the ALJ erred by giving evidentiary weight to the opinion of Dr. Bates, while rejecting the opinions of Dr. Troia-Cancio and Dr. Randhawa.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See <u>id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4

(9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In this case, there is conflicting medical evidence. On the one hand, Dr. Troia-Cancio and Dr. Randhawa both opined, essentially, that plaintiff's functioning is significantly impaired by his depression, and that the situation is not expected to improve. On the other hand, Dr. Bates concluded, essentially, that plaintiff is not impaired. Because the ALJ rejected the opinions of plaintiff's treating physician – Dr. Troia-Cancio – and an examining physician – Dr.

1  Randhawa – the ALJ is required to set forth specific and legitimate reasons.  In resolving the

2  conflicting opinions the ALJ stated:

> In this regard, the undersigned gives little evidentiary weight to the extreme findings assessed by Doctor Troia . . .  While generally the statement of a treating physician is entitled to great weight, the undesigned is not bound by the treating physician's opinion where it is controverted by substantial evidence.  The undersigned believes that the treating physician has failed to cite clinical findings, x-ray results, laboratory studies, or diagnostic testing results that are consistent with the degree of limitations he and the claimant allege.  Doctor Troia did not cite objective findings that relate to functional limitations and restrictions assessed; and his findings appear to be based upon the claimant's recitation of his subjective complaints.  It also appears that he did not examine the claimant at the time of his statement, which suggests that his findings were an accommodation in part by the physician in an attempt to assist the claimant in his disability claim, rather than for treatment.  Doctor Troia appears to base his restrictions on the claimant's symptoms of depression, rather than physical findings.  As the record shows, Doctor Troia noted that the claimant's depression had shown significant improvement with psychotropic medication.
>
> Although Doctor Troia's recent medical assessment notes that the claimant is limited due to low back pain and back spasms, he did not report any physical findings or results of examination or tests which have documented this condition.  There is no indication that the claimant's symptoms were considered to be of sufficient severity to require diagnostic testing or referral to any other physician for further exploration of these symptoms.  Moreover, as noted above, his findings noted at the time of his evaluations are not consistent with the extreme limitations he assessed, nor are they consistent with te findings in the other evidence of record, as described above.

As to Dr. Randhawa, the ALJ stated:

> Similarly, although a psychiatric examiner who evaluated the claimant in August 2002 noted significant mental limitations, he did not have access to the claimant's mental health records, which clearly show that the claimant's depression and anxiety improved with psycho tropic medication.  Therefore, no weight can be given to Doctor Randhawa's conclusions.

Finally, the ALJ gave the following reasons for accepting Dr. Bates' opinion:

> Significant evidentiary weight is given to the findings of Doctor Bates, a psychiatric examiner, who, in addition to interview of the claimant, mental status testing, psychological testing, had access to the claimant's mental health records.  Mental status examination revealed the claimant's speech was normal with note and pressure.  He was cooperative, and his eye

9

contact was good.  Sensorium was clear, and the claimant was alert and oriented.  Concentration was intact.  His mood appeared generally euthymic to slightly depressed.  There was no psychomotor retardation or agitation noted, and no evidence of hallucinations or delusions.  The claimant's Global Assessment of Functioning (GAF) was 65-70, which is indicative of mild mental limitations.  Doctor Bates concluded that although the claimant has some frustration mild anxiety, and mild depression symptoms, they were not severe.

The court finds that the ALJ has met his burden of setting out a detailed and thorough summary of the facts and conflicting clinical evidence in support of specific and legitimate reasons for resolving the conflict in favor of Dr. Bates' opinion.  The ALJ rejected the opinions of Dr. Troia-Cancio and Dr. Randhawa opinion ostensibly because they were not supported by clinical findings.  This is a specific and legitimate reason.  See id.  The question, then, is whether this reason is based on substantial evidence in the record.

1.   Dr. Troia-Cancio

On the August 4, 2002, mental assessment, Dr. Troia-Cancio noted only "tires easily, severe depression" as the medical findings supporting his opinions.  Additionally, because Dr. Troia-Cancio stated on the assessment form that he had last seen plaintiff two days before, it is clear that the assessment was not prepared at the time of his examination.  Moreover, the court has reviewed the progress notes from the August 2, 2002, visit.  Those notes do not indicate that Dr. Troia-Cancio conducted the kind of examination which would yield the specific functional capacity data implicit in the assessment.  Instead, the notes show that plaintiff reported for the flu and an injury to the right foot.

With respect to the October 13, 2003, mental assessment, the form specified in bold print that the physician was required to relate particular medical findings to any assessed reduction in capacity.  In describing the findings which support his assessments that plaintiff has various mild to extreme impairments, Dr. Troia-Cancio stated:

> Being treated for depression HIV.  Has problems with short-term memory and concentration.  Overwhelmed by chronic medical illness.  Would have difficulty with added work stress.

Tires easily from HIV, depression.

As with the August 4, 2002, assessment, these notes do not indicate that Dr. Troia-Cancio performed any actual examination in order to reach these findings.

Similarly, with respect to the November 5, 2003, assessment, the form requested that the physician give an assessment based on an examination.  The form requested the physician provide particular medical findings to support an assessment.  In response, Dr. Troia-Cancio listed the following:

> Tires easily.  Active depression, bi-polar disorder.  Under psychiatric treatment.
>
> Tires easily, gets lightheaded; back spasms
>
> Low back pain.  Needs frequent changes in position.
>
> Patient's history.  Afraid of heights.  Tires easily.  Low back pain.
>
> Limited by pain, easy fatigueability.
>
> Patient reports stiff fingers.  Shaking of fingers.
>
> Afraid of heights.
>
> Tires easily.

Again, these notes do not indicate that Dr. Troia-Cancio performed any examination.  In fact, he specifically states at two points that some of his assessments are based on plaintiff's subjective history and reports of injury.

Of course, it could be that Dr. Troia-Cancio performed a detailed examination of plaintiff's functional capabilities at some time near either the October 13, 2003, or November 5, 2003, assessments.  The court has reviewed Dr. Troia-Cancio's progress notes for his treatment of plaintiff around this time period and finds that plaintiff was seen on September 9, September 10, September 22, October 20, and October 31.  There are no progress notes after October 31, 2003.  Again, these notes do not indicate that the kind of examination which would yield specific functional assessment data was ever performed.

The court is left to wonder why, when so directly asked for specific medical findings based upon an examination, Dr. Troia-Cancio was so general and vague in his responses. The court is satisfied, however, that the ALJ's rationale for rejecting Dr. Troia-Cancio's opinion is supported by substantial evidence in the record.

### 2.  Dr. Randhawa

The ALJ rejected Dr. Randhawa's opinion because he did not have access to plaintiff's mental health records, which show that plaintiff's mental problems are under control with medication. Plaintiff argues that the ALJ erred in making this finding because, to the contrary, the records show that plaintiff's mental condition did not improve with medication. Although the medical evidence suggests that plaintiff's depression was on a trend toward improvement, or at least stabilization, there record is not conclusive. On the one hand, some records suggest that plaintiff's depression was improved. Yet, on the other hand, the records also reveal that plaintiff's medications were increased over time and that he continued to exhibit signs of depression, suggesting that his condition was not improving over time with medication.

Even if plaintiff's interpretation of the medical record is correct – that his condition worsened over time despite medication – the court must wonder how Dr. Randhawa could have come to this conclusion when he admittedly did not have access to plaintiff's mental health records. It would be impossible to make a conclusion as to the trend of improvement, or lack thereof, just based on the one-time examination Dr. Randhawa performed. Therefore, logically, there is no clinical support for this conclusion and the ALJ did not err in rejecting Dr. Randhawa's opinion for this reason.

### B.  **Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903

F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Plaintiff argues that the ALJ failed to address his credibility in light of these legal standards. Specifically, plaintiff asserts the ALJ erred by: (1) concluding that plaintiff's statements about his functional abilities were not supported by the medical evidence and "other relevant non-medical factors," but failing to specify what those other factor are; (2) finding that plaintiff's medically determinable impairments are not consistent with the limitations he asserts; and (3) rejecting plaintiff's subjective complaints.

As to plaintiff's credibility, the ALJ stated:

> . . . Although the claimant has been seen for complaints of occasional fatigue, there is documented no significant complications of HIV; and the record does not support persistent, debilitating fatigue. Though fatigue was noted on occasion, treatment notes only rarely referred to the claimant's actual complaints of fatigue, and do not include clinical

> observations of a tired or weakened appearance.  Treating physician records indicate the claimant was doing well with regard to his HIV, and it was the claimant's testimony that medications keep his HIV disease stable.
>
> The claimant contended at the hearing that he experiences adverse side effects from medication.  However, the medical record does not contain evidence which supports that contention.  I find in the medical records no credible evidence that his HIV medications have resulted in dizziness, nausea, diarrhea, and weakness, which have caused more than a minimal restriction on his ability to perform work activity.  The claimant reported problems with diarrhea and weight fluctuation; however, a review of the record indicates the claimant's weight was stable . . . and his diarrhea had resolved.
>
> With regard to the claimant's complaints of disability due to hepatitis, the record does not reveal that the claimant suffers from chronic liver disease.  The record contains no evidence of splenomegaly or ascites, muscle wasting, or evidence of ascites or peripheral edema.  There is no evidence of any treatment for hepatitis other than routine follow-up examinations, or any suggestion that his hepatitis has resulted in any restriction in his ability to function.
>
> Although the claimant alleges that he has a great deal of pain in his back, legs, and hands . . . these allegations are not supported by the record.  Examinations have not defined any ongoing and significant motor deficits or in sensory findings . . .  The claimant alleges arthritis; however, there were no clinical findings or diagnostic testing in support of this diagnosis.

The court is required to give deference to these findings as long as they are based on the proper process and reasons.  See Saelee, 94 F.3d at 522.  Here, the ALJ clearly used the proper process by identifying the non-credible testimony and the evidence tending to undermine it.  See Lester, 81 F.3d at 834.  The court also finds that the various reasons given by the ALJ were legally proper.  See Smolen, 80 F.3d at 1284; see also Bunnell, 947 F.2d at 345-47.

### C.    Application of the Grids

Plaintiff argues that the Grids are inapplicable in this case because he has non-exertional limitations and that the ALJ should have obtained testimony from a vocational expert.

The Grids provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of

claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[1] See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Plaintiff's argument, in its entirety, is as follows:

> The ALJ did not take the testimony of a vocational expert at Mr. Smeeks' hearing, and instead applied the Medical Vocational Guidelines. This was error. The medical Vocational Guidelines are inapplicable in Mr. Smeeks' claim in light of his severe depression, HIV-induced fatigue, and medication side effects. These non-exertional impairments significantly limit the range of work permitted by his exertional limitations, and render the Medical Vocational Guidelines inapplicable.

With respect to plaintiff's depression, fatigue, and side effects of medication, the ALJ concluded that plaintiff could do a full range of unskilled work, despite these limitations. In particular, the ALJ properly relied on the opinion of Dr. Bates, which constitutes substantial evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). As discussed at length above with respect to the medical opinions, the ALJ's conclusion is supported by the record.

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for judgment on the pleadings is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 14, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE